IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KARA JOBLIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-cv-722 |
| | § | |
| CHAMPION NATIONAL SECURITY, INC. | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Kara Joblin ("Plaintiff") files this Complaint against Champion National Security, Inc. ("Defendant"), showing in support as follows:

## I.  NATURE OF THE CASE

1. This is a civil action brought by Plaintiff pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for Defendant's failure to pay Plaintiff time and one-half her regular rate of pay for all hours worked over 40 during each seven-day workweek as an employee of Defendant.

2. Plaintiff was employed by Defendant as a logistics administrator and paid on an hourly basis.

3. Plaintiff's dates of employment with Defendant are approximately June 2018 to present. However, Defendant unilaterally changed Plaintiff's status between W-2 employee and 1099 contractor during that time period without any corresponding change in her primary job duties or methods of pay.

4. Plaintiff began work as a W-2 employee for Defendant in approximately June 2018 and was changed to 1099 status (*i.e.* mislabeled as an independent contractor) by Defendant in

approximately November 2018. Then, in approximately February 2020, Defendant changed Plaintiff back to a W-2 employee.

5. At all times relevant, Plaintiff was an employee pursuant to the FLSA.

6. During the time period Plaintiff was misclassified as a 1099 worker/independent contractor, Plaintiff routinely worked in excess of 40 hours per seven-day workweek but was not paid any overtime premium pay for her overtime hours worked. Instead, Plaintiff was paid straight time pay only based on her hourly rate of pay, which was approximately $17.85 per hour.

7. Plaintiff files this lawsuit individually and seeks all damages available under the FLSA, including unpaid overtime wages, liquidated damages, legal fees, costs, and post-judgment interest.

## II.   THE PARTIES, JURISDICTION, AND VENUE

### A.   Plaintiff Kara Joblin

8. Plaintiff is a natural person who resides in Dallas County, Texas. She has standing to file this lawsuit.

9. Kara Joblin is also known as Kara Bray. Plaintiff was recently married, but her legal name remains Kara Joblin and all records with Defendant should list the name Kara Joblin relative to Plaintiff.

10. Plaintiff is and was employed by Defendant in Dallas County, Texas.

### B.   Defendant Champion National Security, Inc.

11. Defendant is a domestic for-profit corporation.

12. During all times relevant, Defendant has done business in the State of Texas.

13. Defendant's principal place of business is at 1616 Gateway, Richardson, Texas 75080.

14. Defendant is registered with the Texas Secretary of State to conduct business operations in Texas.

15. At all times between June 2018 to present, Defendant is and has been an "enterprise engaged in commerce" as that phrase is defined by the FLSA.

16. At all times between June 2018 to present, Defendant employed, and continues to employ, two or more employees.

17. At all times between June 2018 to present, Defendant employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person.

18. For example, Defendant employed two or more employees who regularly handled, sold, and/or otherwise worked on goods and/or materials in their daily work that are/were moved in and/or produced for commerce. Examples of such goods and/or materials include computers, computer monitors, computer-related devices, hand-held communication devises (*e.g.* walkie-talkies), security guard uniforms, vehicles used by security guards, (including golf-cart type vehicles and related accessories such as batteries, tires, and lights), and gas/fuel cards.

19. On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross sales or business volume in excess of $500,000.

20. Defendant may be served with summons through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

**C.    Jurisdiction and Venue**

21. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

22. The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

23. During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

24. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases her claims on federal law, namely the FLSA.

25. Venue is proper in this Court because Plaintiff worked for Defendant in Dallas County, Texas. Furthermore, Defendant's principal place of business is in Dallas County, Texas.

### III.    FACTUAL BACKGROUND

26. Defendant provides private security services, such as security guards and/or security monitoring, to third parties.

27. Plaintiff began her employment with Defendant on approximately June 11, 2018.

28. As of the date this lawsuit is filed, Plaintiff is an employee of Defendant's.

29. At all times during her employment with and/or work for Defendant, Plaintiff has been paid on an hourly basis by Defendant.

30. At all times during her employment with and/or work for Defendant, Plaintiff has worked as a logistics administrator.

31. Plaintiff's job duties as a logistics administrator include supply and expense processing related work relative to Defendant's security guard employees/workers. For example, Plaintiff would coordinate for uniforms to be ordered for and/or provided to security guards that worked at a specific customer's location, coordinate on the return of those uniforms by security guards, process expense requests or reports for security guard golf cart type vehicle supplies (such as tires, chargers, and batteries), coordinate data relative to fuel cards used by security guards, and process invoices or expenses from third party entities such as Walmart and Pep Boys.

32. When Plaintiff began work for Defendant in June 2018, Defendant properly labeled her as a W-2 employee.

33. In approximately November 2018, Defendant changed Plaintiff's status from W-2 employee to 1099 independent contractor. There was no corresponding change in Plaintiff's primary job duties or method of pay relative to that change. The only material change in Plaintiff's work for Defendant at that time is that Plaintiff began working from her home instead of at Defendant's office.

34. In approximately February 2020, Defendant changed Plaintiff back to a W-2 employee status. The effective date of that change was approximately February 17, 2020.

35. During the time period Defendant labeled Plaintiff as a 1099 worker/independent contractor, Plaintiff was an employee pursuant to the FLSA.

36. Defendant exercised control over when and how Plaintiff performed her work for Defendant. Plaintiff followed Defendant's instructions on how to do her job as a logistics administrator. Defendant set Plaintiff's work schedule. Defendant assigned Plaintiff with the work she performed. Defendant set the method of pay and rate of pay for Plaintiff. Defendant controlled all aspects of Plaintiff's work for Defendant so that Plaintiff was not a separate or independent economic entity. Rather, Plaintiff was a part of Defendant's workforce. Again, Plaintiff's primary job duties and methods of pay did not change when Defendant converted her from W-2 to 1099 and then back to W-2.

37. Defendant's investments in its business operations vastly exceeded the investment, if any, by Plaintiff in Defendant's business operations. Defendant provided security guard related services to numerous companies and employed many security guards and other employees relative to those services. Defendant provided and/or paid for equipment and supplies used by its

employees relative to those security services, such equipment and supplies including computers, computer software, vehicles (including golf-cart type vehicles and related accessories such as batteries, tires, and lights), fuel, and maintenance and repairs for vehicles. Defendant paid for and provided Plaintiff with the computer and computer software she used to perform her work for Defendant from her home.

38. Defendant controlled all opportunity for profit and loss. Plaintiff was paid an hourly rate for the work she performed for Defendant. Plaintiff did not have any opportunity for "profit" or "loss" as an independent economic entity. Instead, she only had the opportunity to earn more wages by working more hours as is typical in an hourly pay employer-employee relationship.

39. Plaintiff's work as a logistics administrator did not require or involve a unique skill set or require specialized training. Plaintiff received and processed communications and data relative to equipment and expenses in connection with Defendant's security services. Defendant told Plaintiff how and when to do her logistics administrator job.

40. Plaintiff's work for Defendant in a W-2 and/or 1099 status has been ongoing for approximately two years and nine months as of the date this lawsuit is filed. Defendant changed Plaintiff's label from W-2 employee to 1099 contractor and back to W-2 employee during that time period. During the approximate one year and three months that Defendant labeled Plaintiff as a 1099 worker/independent contractor, Plaintiff's sole source of earned income was based on hours she worked for Defendant as a logistics administrator.

41. When Plaintiff was labeled as a 1099 worker/independent contractor, Plaintiff was paid on the basis of invoices she was told by Defendant to submit to Defendant. Those invoices were based on work in a seven-day week. However, Defendant did not inform Plaintiff of the definition of "work" under the FLSA or of the FLSA's "continuous workday rule" relative to those

invoices, so those invoices likely understate the actual time worked by Plaintiff per workday and per seven-day workweek.

42. When Plaintiff was labeled as a 1099 worker/independent contractor, she routinely worked more than 40 hours per seven-day workweek. Defendant did not pay Plaintiff time and one-half her regular rate of pay when she worked more than 40 hours in a seven-day workweek when it labeled her as a 1099 worker/independent contractor. Instead, Defendant paid Plaintiff straight time only. For example, in the seven-day workweek between January 27, 2020 to February 2, 2020, Plaintiff worked 46.75 hours as a logistics administrator for Defendant. Defendant paid Plaintiff $17.85 per hour which resulted in total gross pay for that workweek of $834.49. No FLSA overtime premium was paid to Plaintiff despite having worked at least 6.75 overtime hours that workweek.

43. Plaintiff was an employee under the FLSA when Defendant labeled her as a 1099 worker/independent contractor. Defendant's failure to pay Plaintiff time and one-half her regular rate of pay for each and every hour worked over 40 in all applicable seven-day workweeks is a violation of the FLSA.

## IV.     CONTROLLING LEGAL RULES

44. The FLSA states that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

45. "The FLSA defines an employee as any individual employed by an employer." *Lovo v. Express Courier Intl., Inc.*, 4:16-CV-853-Y, 2019 WL 387367, at *2 (N.D. Tex. Jan. 30,

2019) (Means, J.) (citing 29 U.S.C. § 203(e)(1) (brackets and quotations omitted)). "Employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* (citing 29 U.S.C. § 203(d)). "[E]mploy means to suffer or permit to work." *Id.* (citing 29 U.S.C. § 203(g) (quotations omitted)). Accordingly, "the definition of employee under the FLSA is particularly broad." *Id.* (citing *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (brackets omitted)).

46. Whether an individual is an employee, who is covered by the FLSA's provisions, as opposed to an independent contractor, who is not covered by the FLSA, is determined by the economic realities test. *Hopkins*, 545 F.3d at 343. The purpose of the economic realities test is to determine whether "the worker is economically dependent upon the alleged employer or is instead in business for himself." *Id.*

47. District Courts within the Fifth Circuit consider the following five factors in assessing the economic reality of the working relationship: (1) the degree of control exercised by the alleged employer, (2) the extent of the relative investments of the worker and the alleged employer, (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer, (4) the skill and initiative required in performing the job, and (5) the permanency of the relationship. *Id.* at 343 (*citing Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* 161 F.3d 299, 303 (5th Cir. 1998). The Fifth Circuit further noted that: "[n]o single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind." *Id*. (*citing Herman*, 161 F.3d at 303 and *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043-44 (5th Cir. 1987)).

48. Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the

regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

49. Under the FLSA's Continuous Workday Rule, "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked." 29 C.F.R. § 790.6.

50. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

51. An employee is employed for purposes of the FLSA if the employer has "knowledge, actual or constructive, that [s]he was working." *Mack v. Avara Cmty. Health Servs.*, No. 3:13-CV-1976-P, 2016 U.S. Dist. LEXIS 129266, at *3-4 (N.D. Tex. Feb. 5, 2016) (Solis, J.) (*citing Newton,* 47 F.3d at 748). "Constructive knowledge exists if by exercising reasonable diligence an employer would become aware that an employee is working overtime." *Von Friewalde v. Boeing Aero. Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) (quotations and citation omitted).

52. The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

53. With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

54. Failing to pay the required overtime premium for all hours worked over 40 in a seven-day workweek is a violation of the FLSA. 29 U.S.C. § 216(b).

## V.     FLSA CLAIMS

55. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

56. Defendant is and/or has been an eligible and covered employer under the FLSA in 2018, 2019, 2020, and 2021. 29 U.S.C. § 203(d).

57. Defendant is and/or has been an enterprise engaged in commerce under the FLSA during 2018, 2019, 2020, and 2021. 29 U.S.C. § 203(s)(1)(A).

58. Plaintiff is and has been an employee of Defendant pursuant to the FLSA in 2018, 2019, 2020, and 2021. 29 U.S.C. § 203(e).

59. Plaintiff is and was a covered employee under 29 U.S.C. § 207(a)(1) in 2018, 2019, 2020, and 2021.

60. Plaintiff routinely engages in and has engaged in commerce as an employee of Defendant relative to Defendant's business operations. 29 U.S.C. § 207(a)(1).

61. Plaintiff is and was paid on an hourly basis by Defendant in 2018, 2019, 2020, and 2021.

62. When Plaintiff was labeled as a 1099 worker/independent contractor by Defendant, Plaintiff routinely worked in excess of 40 hours per seven-day workweek as a logistics administrator for Defendant.

63. When Plaintiff was labeled as a 1099 worker/independent contractor by Defendant, Plaintiff was economically dependent on Defendant as opposed to being in business for herself.

64. When Plaintiff was labeled as a 1099 worker/independent contractor by Defendant, Plaintiff was an employee of Defendant's pursuant to the FLSA.

65. When Plaintiff was labeled as a 1099 worker/independent contractor by Defendant, Defendant was required to pay Plaintiff time and one-half her regular rate of pay for all hours worked over 40 in each relevant seven-day workweek. 29 U.S.C. § 207(a)(1).

66. When Plaintiff was labeled as a 1099 worker/independent contractor by Defendant, Defendant did not pay Plaintiff time and one-half her regular rate of pay for any hours worked over 40 in any seven-day workweek.

67. The failure of Defendant to pay Plaintiff time and one-half her regular rate of pay for each and every hour worked over 40 in a seven-day workweek is a violation of the FLSA.

68. Defendant's violations of the FLSA are and/or were willful within the meaning of 29 U.S.C. § 255(a). When Plaintiff was labeled as a 1099 worker/independent contractor by Defendant, Defendant was aware that Plaintiff regularly worked more than 40 hours per seven-day workweek without being paid any overtime premium pay for those overtime hours worked. Some of those unpaid overtime hours are shown in invoices Defendant received from Plaintiff. Furthermore, as shown in part by Defendant switching Plaintiff from W-2 status to 1099 status and then back to W-2 status without any corresponding change in Plaintiff's job duties or methods

of pay, Defendant was aware that it misclassified Plaintiff relative to employee status under the FLSA.

69. Plaintiff seeks all damages available for Defendant's failure to timely pay all overtime wages owed.

## VI. DAMAGES AND PRAYER

70. Plaintiff asks that the Court issue a summons for Defendant to appear and answer, and that Plaintiff be awarded a judgment against Defendant and/or order(s) from the Court for the following:

    a. All damages allowed by the FLSA, including back overtime wages,

    b. Liquidated damages in an amount equal to back FLSA wages,

    c. Legal fees,

    d. Costs,

    e. Post-judgment interest, and/or

    f. All other relief to which Plaintiff is justly entitled.

Date: March 29, 2021.

Respectfully submitted,

By: s/ Allen R. Vaught
Allen R. Vaught
Attorney-In-Charge
TX Bar No. 24004966
Vaught Firm, LLC
1910 Pacific Ave., Suite 9150
Dallas, Texas 75201
(972) 707-7816 – Telephone
(972) 591-4564 – Facsimile
avaught@txlaborlaw.com

ATTORNEY FOR PLAINTIFF